**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Brett Perloff | : |
| | : |
| Plaintiff | : Civil Action No. |
| | : |
| vs. | : Jury Trial Demanded |
| | : |
| SoMo Audience Corp., Robert Manoff, and Todd Houck | : |
| | : |
| Defendants | : |

## **COMPLAINT**

Brett Perloff ("Plaintiff"), by and through undersigned counsel, hereby complains as follows against SoMo Audience Corp., Robert Manoff, and Todd Houck (collectively "Defendants"):

### **Introduction**

1.      This is an action for breach of contract, unjust enrichment, and violation of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 *et seq.* Plaintiff asserts that Defendants failed to pay — and continue to fail to pay — salary and monthly commissions that Defendants agreed to pay Plaintiff.

### **Jurisdiction and Venue**

2.      This Court has original jurisdiction to hear this action and adjudicate the claims herein pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and because Plaintiff is a citizen of New York and Defendants are citizens of New Jersey.

3.      Venue is appropriate in the District of New Jersey because the events or omissions giving rise to Plaintiff's claims occurred therein and because Defendants are doing business therein.

1

## The Parties

4.       Plaintiff is an adult individual and is a citizen and resident of the United States. Plaintiff resides in New York, New York.

5.       At all relevant times, Plaintiff was an employee within the meaning of the New Jersey Wage Payment Law. *See* N.J.S.A. 34:11-4.1(b) ("Employee" defined as "any person suffered or permitted to work by an employer, except that independent contractors and subcontractors shall not be considered employees.").

6.       Defendant SoMo Audience Corp. ("SoMo") is a Delaware for profit corporation with its headquarters located at 18 Bank Street, Suite 206, Summit, New Jersey 07901.

7.       Defendant SoMo employs approximately ten (10) to fifteen (15) employees in New Jersey.

8.       Defendant SoMo is an employer within the meaning of the New Jersey Wage Payment Law. *See* N.J.S.A. 34:11-4.1(a) ("Employer" defined as "any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased individual, or the receiver, trustee, or successor of any of the same, employing any person in this State. For the purposes of this act the officers of a corporation and any agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation.").

9.       Defendant Robert Manoff ("Manoff") is an adult individual and is a citizen and resident of the United States. Defendant Manoff resides in Livingston, New Jersey and has a principal place of business at 18 Bank Street, Suite 206, Summit, New Jersey 07901.

10.      At all relevant times, Defendant Manoff was Defendant SoMo's Chief Executive Officer. As Chief Executive Officer, Defendant Manoff controls Defendant SoMo's operations and finances and jointly makes all significant business decisions for Defendant SoMo with Defendant

Houck. Defendant Manoff also jointly makes all final significant personnel decisions, including hiring and firing employees, setting employee compensation, setting employment policies, and determining employees' job titles, with Defendant Houck.

11.     At all relevant times, Defendant Manoff acted as an agent of and on behalf of Defendant SoMo.

12.     At all relevant times, Defendant Manoff was an employer within the meaning of the New Jersey Wage Payment Law. *See* N.J.S.A. 34:11-4.1(a).

13.     Defendant Todd Houck ("Houck") is an adult individual and is a citizen and resident of the United States. Upon information and belief, Houck resides in Clarksboro, New Jersey and has a principal place of business at 18 Bank Street, Suite 206, Summit, New Jersey 07901.

14.     At all relevant times, Defendant Houck was Defendant SoMo's Chief Operating Officer. As Chief Operating Officer, Defendant Houck controls Defendant SoMo's technology and product operations and jointly makes all significant business decisions for Defendant SoMo with Defendant Manoff. Defendant Houck also jointly makes all final significant personnel decisions, including hiring and firing employees, setting employee compensation, setting employment policies, and determining employees' job titles, with Defendant Manoff.

15.     At all relevant times, Defendant Houck acted as an agent of and on behalf of Defendant SoMo.

16.     At all relevant times, Defendant Houck was an employer within the meaning of the New Jersey Wage Payment Law. *See* N.J.S.A. 34:11-4.1(a).

## Factual Background

17.     Defendant SoMo provides "touchscreen advertising solutions" to businesses.

18.     On or about July 12, 2013, Defendant Manoff offered Plaintiff a position with Defendant SoMo as Director of Business Development with a $35,000.00 annual salary and plus a monthly commission of 5% of ad sales that Plaintiff generated for Defendant SoMo.

19.     Plaintiff accepted Defendant SoMo's job offer and began working for Defendant SoMo on September 1, 2013.

20.     As Director of Business Development, Plaintiff was responsible for establishing relationships with businesses that wanted to advertise through Defendant SoMo's platform.

21.     In December 2013, Defendant Manoff changed Plaintiff's role in the company to overseeing Defendant SoMo's ad marketplace and offered to increase Plaintiff's annual salary to $45,000.00 plus a monthly commission of 2% of gross revenue generated for Defendant SoMo's ad marketplace.

22.     Plaintiff accepted Defendant SoMo's offer.

23.     In 2014, Defendant Manoff changed Plaintiff's job title to Vice President, Programmatic.

24.     As Vice President, Programmatic, Plaintiff oversaw Defendant SoMo's digital advertising universe and generated consistent revenue growth for Defendant SoMo's stakeholders.

25.     During 2014, Defendant increased Plaintiff's annual salary multiple times, including increases to $55,000.00 and $65,000.00, plus the monthly commission of 2% of gross revenue generated for Defendant SoMo's ad marketplace. Plaintiff accepted each salary increase.

26.     Beginning in December 2014, with Plaintiff's assistance in his role as Vice President, Programmatic, Defendant SoMo's business began to take off.

27.     In or around December 2014, Defendant Manoff offered to increase Plaintiff's annual salary to $75,000.00 plus the monthly commission of 2% of gross revenue generated for Defendant SoMo's ad marketplace.

28.     Plaintiff accepted Defendant SoMo's offer.

29.     Throughout Plaintiff's employment with Defendant SoMo, Defendant SoMo regularly paid Plaintiff's monthly commission within sixty (60) days of the end of each month.

30.     In June 2017, however, Defendant Manoff told Plaintiff that, due to cash flow issues, Defendant SoMo would begin paying Plaintiff's monthly commissions within ninety (90) days of the end of each month.

31.     Plaintiff accepted these revised payment terms.

32.     For the remainder of Plaintiff's employment with Defendant SoMo, Defendant SoMo regularly paid Plaintiff's monthly commissions within ninety (90) days of the end of each month.

33.     In February 2018, Defendant Manoff informed Plaintiff that, <u>retroactive</u> to January 1, 2018, Defendant SoMo was changing Plaintiff's compensation plan as follows:

(a)     Defendant SoMo increased Plaintiff's annual salary from $75,000.00 to $150,000.00;

(b)     Defendant SoMo cut Plaintiff's monthly commission in half — from 2% to 1% of gross revenue generated for Defendant SoMo's ad marketplace; and

(c)     Defendant Manoff told Plaintiff that Plaintiff would receive an annual bonus equal to .5% of Defendant SoMo's gross profit.

34.     Defendant Manoff told Plaintiff that Defendant SoMo changed Plaintiff's compensation due to Defendant SoMo's cash flow and because Defendant SoMo could not grow with Plaintiff's compensation.

35.     Plaintiff accepted these revised compensation terms.

36.     In February 2018, Defendant SoMo retroactively changed Plaintiff's monthly commission from 2% to 1% of gross revenue generated for Defendant SoMo's ad marketplace, effective January 1, 2018; however, Defendant SoMo did not increase Plaintiff's base salary until May 1, 2018.

37.     Defendant SoMo cannot retroactively change an employee's compensation; however, if Defendant SoMo retroactively changed Plaintiff's compensation, Defendant SoMo should have retroactively changed Plaintiff's base salary to $150,000.00 and not just Plaintiff's commission.

38.     Plaintiff informed Defendant Manoff that Defendant SoMo retroactively cut Plaintiff's monthly commission percentage but did not increase Plaintiff's base salary until May 1, 2018; however, Defendant Manoff refused to discuss the issue.

39.     On December 18, 2018, Defendants Manoff and Houck issued an annual review to Plaintiff. Defendant Manoff told Plaintiff that Defendant SoMo would not be paying Plaintiff's annual bonus because Plaintiff earned the same as Plaintiff earned in 2017. Plaintiff again asked Defendants Manoff and Houck about his base salary, which should have increased to $150,000.00 effective January 1, 2018. Defendant Manoff told Plaintiff that they would look into this and get back to him.

40.     On December 20, 2018, Plaintiff followed up with Defendants Manoff and Houck via email and asked about his annual bonus and the salary that Defendant SoMo owed Plaintiff because Defendant SoMo did not pay Plaintiff's $150,000.00 salary between January 1, 2018 and April 30, 2018. Defendants Manoff and Houck did not respond to Plaintiff's email.

41.     On January 7, 2019, Plaintiff informed Defendant Manoff that he was resigning from his position with Defendant SoMo.

42.     On January 7, 2019, Defendant Manoff acknowledged to Plaintiff that Defendant SoMo still owed Plaintiff three (3) months of monthly commissions, but Defendant Manoff told Plaintiff that Defendant SoMo was not obligated to pay Plaintiff's monthly commissions because Defendant SoMo considered the monthly commissions to be bonuses.

43.     On January 7, 2019, Plaintiff told Defendant Manoff that Plaintiff's monthly commissions are wages that Defendant SoMo must pay Plaintiff.

44.     Later on January 7, 2019, Defendant Manoff later told Plaintiff that Defendant SoMo was obligated to pay Plaintiff's monthly commissions.

45.     On January 10, 2019, Plaintiff's last day of employment with Defendant SoMo, Defendant Manoff assured Plaintiff that Defendant SoMo would pay Plaintiff's outstanding monthly commissions once they became due, which was ninety (90) days after the end of each month.

46.     Pursuant to the parties' oral agreement and Defendant SoMo's policy and practice of paying Plaintiff's monthly commissions within ninety (90) days following the end of each month, on January 31, 2019, Plaintiff's monthly commission for October 2018 was due. Defendant SoMo did not pay Plaintiff's monthly commission, which is estimated to be $23,500.00.

47.     Between February 14, 2019 and March 6, 2019, Plaintiff sent multiple emails to Defendants Manoff and Houck requesting a status on Defendant SoMo's payment of Plaintiff's October 2018 commission; however, Defendants Manoff and Houck refused to provide a status to Plaintiff regarding Plaintiff's October 2018 commission.

48.     Pursuant to the parties' oral agreement and Defendant SoMo's policy and practice of paying Plaintiff's monthly commissions within ninety (90) days following the end of each month, on February 28, 2019, Plaintiff's monthly commission for November 2018 was due. Defendant SoMo did not pay Plaintiff's November 2018 commission, which is estimated to be $12,500.00.

49.     Pursuant to the parties' oral agreement and Defendant SoMo's policy and practice of paying Plaintiff's monthly commissions within ninety (90) days following the end of each month, on March 31, 2019, Plaintiff's monthly commission for December 2018 was due. Defendant SoMo did not pay Plaintiff's December 2018 commission, which is estimated to be $18,500.00.

**Count I**
**Breach of Contract**
**Plaintiff v. Defendant SoMo**

50.     Paragraphs 1 through 49 are incorporated herein by reference as if set forth at length.

51.     As averred above, on or about July 12, 2013, Defendant Manoff offered Plaintiff a position with Defendant SoMo as Director of Business Development with a $35,000.00 annual salary plus a monthly commission of 5% of ad sales that Plaintiff generated for Defendant SoMo.

52.     As averred above, Plaintiff accepted Defendant SoMo's job offer and began working for Defendant SoMo on September 1, 2013.

53.     This oral agreement and all agreed oral changes to Plaintiff's compensation terms during Plaintiff's employment with Defendant SoMo formed an oral contract between Plaintiff and Defendant SoMo.

54.     As averred above, in or around 2014, Defendant SoMo changed Plaintiff's job title to Vice President, Programmatic.

55.     As averred above, during Plaintiff's employment, Defendant SoMo changed the terms of Plaintiff's compensation, which terms Plaintiff accepted.

56.     As averred above, the last change in Plaintiff's compensation occurred in February 2018 when Defendant Manoff informed Plaintiff that, retroactive to January 1, 2018, Defendant SoMo was changing Plaintiff's compensation plan as follows:

(a)      Defendant SoMo increased Plaintiff's annual salary from $75,000.00 to $150,000.00;

(b)      Defendant SoMo cut Plaintiff's monthly commission in half — from 2% to 1% of gross revenue generated for Defendant SoMo's ad marketplace; and

(c)      Defendant SoMo told Plaintiff that he would receive an annual bonus equal to .5% of Defendant SoMo's gross profit.

57.     As averred above, Plaintiff accepted these revised compensation terms.

58.     At all relevant times, Plaintiff did what the oral agreement required him to do, which was to perform his job as Vice President, Programmatic for Defendant SoMo.

59.     As averred above, Defendant SoMo has not done what the oral agreement requires Defendant SoMo to do — specifically, to pay Plaintiff a base salary of $150,000.00 for the time period January 1, 2018 through April 30, 2018, to pay Plaintiff's monthly commissions for October, November, and December 2018, and to pay Plaintiff's 2018 bonus.

60.     Since Defendant SoMo has not performed Defendant SoMo's agreed-upon duties, Defendant SoMo is in breach of the parties' oral agreement.

61.     As a result of Defendant SoMo's breach, Plaintiff has suffered damages.

62.     Plaintiff estimates his damages as $106,500.00, which breaks down as:

(a)      $25,000.00 in unpaid salary for the time period January 1, 2018 through April 30, 2018;

(b)      $23,500.00 in unpaid commissions for October 2018;

(c)      $12,500.00 in unpaid commissions for November 2018;

(d)      $18,500.00 in unpaid commissions for December 2018; and

(e)      $27,000.00 for Plaintiff's unpaid 2018 bonus.

WHEREFORE, Plaintiff seeks the following relief:

(1)    Compensatory damages;

(2)    Pre-judgment and post-judgment interest;

(3)    Costs of suit; and

(4)    Such other relief as the Court shall deem proper.

**Count II**
**Unjust Enrichment**
**<u>Plaintiff v. Defendant SoMo</u>**

63.    Paragraphs 1 through 62 are incorporated herein by reference as if set forth at length.

64.    As averred above, at all relevant times, Plaintiff worked for Defendant SoMo as Vice President, Programmatic.

65.    As averred above, at all relevant times, Plaintiff performed his job as Vice President, Programmatic for Defendant SoMo.

66.    As averred above, beginning in December 2014, with Plaintiff's assistance in his role as Vice President, Programmatic, Defendant SoMo's business begins to take off.

67.    At all relevant times, Plaintiff consistently generated revenue for Defendant SoMo through its ad marketplace.

68.    As averred above, in February 2018, Defendant Manoff informed Plaintiff that, <u>retroactive</u> to January 1, 2018, Defendant SoMo was changing Plaintiff's compensation plan as follows:

(a)    Defendant SoMo increased Plaintiff's annual salary from $75,000.00 to $150,000.00;

(b)    Defendant SoMo cut Plaintiff's monthly commission in half — from 2% to 1% of gross revenue generated for Defendant SoMo's ad marketplace; and

10

(c)     Defendant SoMo told Plaintiff that he would receive an annual bonus equal to .5% of Defendant SoMo's gross profit.

69.     As averred above, Defendant SoMo did not pay Plaintiff a base salary of $150,000.00 for the time period January 1, 2018 through April 30, 2018, did not pay Plaintiff's monthly commissions for October, November, and December 2018, and did not pay Plaintiff's 2018 bonus.

70.     Defendant SoMo has been unjustly enriched by not paying Plaintiff's full salary from January 1, 2018 through April 30, 2018, October, November, and December 2018 commissions, and 2018 annual bonus.

71.     As a result, Plaintiff has suffered damages.

72.     Plaintiff estimates his damages as $106,500.00, which breaks down as:

(a)     $25,000.00 in unpaid salary for the time period January 1, 2018 through April 30, 2018;

(b)     $23,500.00 in unpaid commissions for October 2018;

(c)     $12,500.00 in unpaid commissions for November 2018;

(d)     $18,500.00 in unpaid commissions for December 2018; and

(e)     $27,000.00 for Plaintiff's unpaid 2018 bonus.

WHEREFORE, Plaintiff seeks the following relief:

(1)     Compensatory damages;

(2)     Pre-judgment and post-judgment interest;

(3)     Costs of suit; and

(4)     Such other relief as the Court shall deem proper.

**Count III**
**Violation of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 *et seq*.**
**Plaintiff v. All Defendants**

73.     Paragraphs 1 through 72 are incorporated herein by reference as if set forth at length.

74.     As averred above, Defendants SoMo, Manoff, and Houck are employers within the meaning of the New Jersey Wage Payment Law. *See* N.J.S.A. 34:11-4.1(a).

75.     As averred above, on or about July 12, 2013, Defendant Manoff offered Plaintiff a position with Defendant SoMo as Director of Business Development with a $35,000.00 annual salary and plus a commission of 5% of ad sales that Plaintiff generated for Defendant SoMo.

76.     As averred above, Plaintiff accepted Defendant SoMo's job offer and began working for Defendant SoMo on September 1, 2013.

77.     As averred above, during Plaintiff's employment, Defendant SoMo changed the terms of Plaintiff's compensation, which terms Plaintiff accepted.

78.     As averred above, in 2014, Defendant SoMo changed Plaintiff's job title to Vice President, Programmatic.

79.     As averred above, the last change in Plaintiff's compensation occurred in February 2018 when Defendant Manoff informed Plaintiff that, underline retroactive to January 1, 2018, Defendant SoMo was changing Plaintiff's compensation plan as follows:

(a)     Defendant SoMo increased Plaintiff's annual salary from $75,000.00 to $150,000.00;

(b)     Defendant SoMo cut Plaintiff's commission in half — from 2% to 1% of gross revenue generated for Defendant SoMo's ad marketplace; and

(c)     Defendant SoMo told Plaintiff that he would receive an annual bonus equal to .5% of Defendant SoMo's gross profit.

80.     As averred above, Plaintiff accepted these revised compensation terms.

81.     As averred above, Defendants did not provide advance notice to Plaintiff of the change in compensation terms, but instead, retroactively changed Plaintiff's base salary and commission.

82.     As averred above, Defendant SoMo did not pay Plaintiff's base salary of $150,000.00 for the time period January 1, 2018 through April 30, 2018 and did not pay Plaintiff's monthly commissions for October, November, and December 2018.

83.     Plaintiff's salary and monthly commissions are "wages" as defined in the New Jersey Wage Payment Law. *See* N.J.S.A. 34:11-4.1(c) ("Wages" defined as "the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto.").

84.     Upon information and belief, Defendants Manoff and/or Houck made the decision to not pay Plaintiff's wages.

85.     Plaintiff did not authorize Defendants to withhold wages.

86.     As a result of Defendants' failure to pay wages due and owing to Plaintiff, Plaintiff has suffered damages.

87.     Plaintiff estimates his damages as $79,500.00, which breaks down as:

(a)     $25,000.00 in unpaid salary for the time period January 1, 2018 through April 30, 2018;

(b)     $23,500.00 in unpaid commissions for October 2018;

(c)     $12,500.00 in unpaid commissions for November 2018; and

(d)     $18,500.00 in unpaid commissions for December 2018.

WHEREFORE, Plaintiff seeks the following relief:

(1)     Compensatory damages;

(2)     Pre-judgment and post-judgment interest;

(3)     Costs of suit; and

(4)     Such other relief as the Court shall deem proper.

## **<u>JURY DEMAND</u>**

Plaintiff hereby demands a jury to try all claims triable by jury.


Respectfully submitted,

Dated: April 1, 2019                          <u>/s/ Stephanie J. Mensing</u>
Stephanie J. Mensing
Mensing Law LLC
1635 Market Street, Suite 1600
Philadelphia, PA 19103
(215) 586-3751; (215) 359-2741 fax

Attorney for Plaintiff